UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIS RYAN,

                Petitioner,

vs.                          Case No.  2:08-cv-516-FtM-29SPC
                                  Case No.  2:05-cr-112-FtM-29SPC

UNITED STATES OF AMERICA,

                Respondent.
_____

## OPINION AND ORDER

_____This matter comes before the Court on petitioner Ryan Willis' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Cv. Doc. #1)[1] and supporting Memorandum (Cv. Doc. #2) and Affidavit (Cv. Doc. #3), all filed on June 30, 2008.  The United States filed its Answer in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 on August 30, 2008 (Cv. Doc. #9).  Petitioner thereafter filed a Reply (Cv. Doc. #10) on December 5, 2008.  For the reasons set forth below, the motion is denied.

---

[1]The Court will make references to the dockets in the instant action and in the related criminal case throughout this opinion. The Court will refer to the docket of civil habeas case as "Cv. Doc.", and will refer to the underlying criminal case as "Cr. Doc."

**I.**

On November 9, 2005, a federal grand jury in Fort Myers, Florida filed a one-count Indictment (Cr. Doc. #1) charging petitioner Ryan Willis (petitioner or Willis) with possession with intent to distribute 50 grams or more of cocaine base, crack cocaine. Pursuant to a Plea Agreement (Cr. Doc. #19), petitioner pled guilty on August 7, 2006 (Cr. Docs. #22, #38). On November 6, 2006, the Court sentenced petitioner to a 262 month term of imprisonment, to be followed by 60 months supervised release. (Cr. Docs. #26, #35.) Judgment (Cr. Doc. #27) was filed on November 8, 2006.

Petitioner, through counsel, filed a Notice of Appeal (Cr. Doc. #28) on November 8, 2006. On June 28, 2007, the Eleventh Circuit Court of Appeals granted the government's motion to dismiss the appeal based upon the appeal waiver provision in the Plea Agreement, finding that "the record shows that the waiver was knowing and voluntary and the issue raised on appeal is not one of the exceptions to the waiver." (Cr. Doc. #40.) The United States Supreme Court denied petitioner's petition for a writ of *certiorari* on October 29, 2007. Willis v. United States, 128 S. Ct. 524 (2007).

Read liberally, petitioner's timely § 2255 motion sets forth the following claims: (1) his guilty plea was not knowing and voluntary because (a) his attorney failed to prepare for trial and

investigate options other than a guilty plea, and pressured him into believing a guilty plea was his only option; (b) neither the Court nor his attorney informed him that he may be subject to the career offender sentence enhancement, and (c) his attorney made false promises regarding the length of sentence; and (2) his waiver of appeal provision in the Plea Agreement was not knowing and voluntary.  The Court will address the second issue first.

## II.

Petitioner asserts that the waiver of appeal provision in his Plea Agreement, which also includes collateral challenges, was not entered knowingly and voluntarily, and therefore was not enforceable.  Petitioner also argues that he should be able to challenge the ineffectiveness of counsel at sentencing despite such a waiver provision.  The government responds that the provision is valid and enforceable, that the Eleventh Circuit has already found it to be valid and enforceable, and that petitioner has therefore waived his right to pursue the § 2255 relief asserted.

It is well established that sentence-appeal waivers are valid if made knowingly and voluntarily.  Williams v. United States, 396 F.3d 1340, 1341 (11th Cir.)(citing United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993)), cert. denied, 126 S. Ct. 246 (2005).  To be enforceable, the government must demonstrate either that the district court specifically questioned the defendant concerning the sentence waiver provision during the guilty plea

colloquy or that it is clear from the record that defendant otherwise understood the full significance of the waiver. <u>Bushert</u>, 997 F.2d at 1351. Appeal waivers are enforced according to their terms. <u>United States v. Bascomb</u>, 451 F.3d 1292, 1294 (11th Cir. 2006).

Petitioner argues that he should be able to assert ineffective assistance of counsel at sentencing despite a waiver provision, even if the provision is enforceable. The Eleventh Circuit has held to the contrary, stating that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." <u>Williams</u>, 396 F.3d at 1342.

Petitioner's Plea Agreement contained a provision under which petitioner "expressly waives the right to appeal [his] sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except. . . ." (Cr. Doc. #19, p. 12 ¶B5.) On direct appeal, the Eleventh Circuit found that "the record shows that the waiver was knowing and voluntary and the issue raised on appeal is not one of the exceptions to the waiver." (Cr. Doc. #40.) This is the law of the case. <u>United States v. Jordan</u>, 429 F.3d 1032, 1035 (11th Cir. 2005). While petitioner points out in his Reply that the Eleventh

-4-

Circuit was necessarily only discussing the direct appeal portion of the waiver provision, both the direct appeal and the collateral attack waivers are in the same provision, and the same record applies to each. Even if the issue is revisited with the focus being on the waiver of collateral attack, the record (discussed in detail below) clearly establishes that the waiver was knowing and voluntary under <u>Bushert</u>, 997 F.2d at 1350, and its progeny. Therefore, the appeal waiver as to collateral challenges is valid and enforceable.

**III.**

While the appeal waiver provision is valid and enforceable, it does not preclude petitioner's claims that the guilty plea was not knowing and voluntary or that his attorney was ineffective leading up to his guilty plea. <u>Patel v. United States</u>, 252 Fed. Appx. 970, 975 (11th Cir. 2007). Therefore, the Court addresses these issues.

**A.**

"A guilty plea is more than a confession which admits that the accused did various acts. [ ] It is an admission that he committed the crime charged against him. [ ] By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." <u>United States v. Broce</u>, 488 U.S. 563, 570 (1989)(internal quotations and citations omitted). For this reason, the United States Constitution requires that a guilty plea must be voluntary

and defendant must make the related waivers knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences. United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976). After a criminal defendant has plead guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003), cert. denied, 540 U.S. 1149 (2004), attack the voluntary and knowing character of the guilty plea, Tollett v. Henderson, 411 U.S. 258, 267 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986).

To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005); United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999). Rule 11 explicitly directs the district judge not to accept a plea without determining these core concerns. Therefore, on review the Court is "'warranted in regarding the court's acceptance of the plea as a positive finding

on each [component of the Rule]. . . .'" United States v. Buckles, 843 F.2d 469, 473 (11th Cir. 1988)(quoting United States v. Dayton, 604 F.2d 931, 935 (5th Cir. 1979)(en banc)), cert. denied, 490 U.S. 1099 (1989).   A defendant who fails to object to a Rule 11 error has the burden of satisfying the plain-error rule, Moriarty, 429 F.3d at 1019, and a reviewing court may consult the whole record when considering the effect of any error on substantial rights, United States v. Vonn, 535 U.S. 55, 74-75 (2002).   A petitioner "will rarely, if ever, be able to obtain relief for Rule 11 violations under § 2255" and such relief is available "only in the most egregious cases."   United States v. Dominguez Benitez, 542 U.S. 74, 83 n.9 (2004).

**B.**

At the change of plea hearing, the magistrate judge personally addressed petitioner in open court.  (Doc. #38.)  Petitioner was told that if he did not understand anything the magistrate judge said he should let her know; he was also advised that he could confer with his attorney at any time during the plea.  (Id. at 2.) Petitioner was then placed under oath, and was advised of his obligation to tell the truth and that false statements could be prosecuted for perjury.  (Id. at 2-3.)  Petitioner said he understood.  (Id. at 3.)  Petitioner was also told that his testimony during the plea colloquy could be used against him in future proceedings, which petitioner said he understood.  (Id. at 3.)

Petitioner answered some biographic questions, stating he had gone to the ninth grade and could read, write and understand English. (<u>Id.</u> at 4-5.)  Petitioner stated he was not currently under the influence of any drugs or medication, was not currently under the care of a physician or psychiatrist, did not suffer from any mental or emotional disability, and clearly understood where he was, what he was doing, and the importance of the proceeding. (<u>Id.</u>)

Petitioner acknowledged receiving a copy of the Indictment, which petitioner said he had read, understood, and discussed with his attorney. (<u>Id.</u> at 5.)  Petitioner advised the Court that he had had enough time to discuss the facts and circumstances surrounding the case and the charges with his attorney. (<u>Id.</u> at 5-6.)  Petitioner stated he was satisfied with the services of his attorney, and that he had no complaints either about what his attorney had done or what his attorney had not done. (<u>Id.</u> at 6.)

Petitioner was handed the written Plea Agreement, and stated he had initialed on every page, had signed the last page; petitioner further stated he had read the Plea Agreement, understood it, and discussed it with his attorney before he signed it. (<u>Id.</u> at 6-7.)  Petitioner stated that the Plea Agreement contained all the promises made to him by the government, and that there were no verbal promises or representations not in the Plea Agreement. (<u>Id.</u> at 8.)  Both counsel for petitioner and counsel

for the government confirmed the absence of any verbal promises or representations.  (Id. at 8-9.)

Petitioner stated he understood that he had agreed to enter a plea of guilty to Count One of the Indictment which charged him with possession with intent to distribute 50 grams or more of cocaine base, crack cocaine.  (Id. at 9.)  Petitioner was advised that the penalty for this offense was a mandatory minimum term of imprisonment of ten years up to life, a fine of $4 million dollars, supervised release of at least five years up to life, and a special assessment of $100, and petitioner acknowledged that he understood the potential penalties.  (Id. at 10.)  The magistrate judge then explained that the sentencing court would be obligated to calculate the applicable Sentencing Guidelines range, any possible departures, and other sentencing factors under 18 U.S.C. § 3553(a). (Id. at 10.)  Petitioner stated he had discussed the Sentencing Guidelines with his attorney and his attorney had explained that there were a number of considerations which go into determining the Sentencing Guidelines range.  (Id.)  Petitioner stated that he understood the Sentencing Guidelines were advisory, and understood that his criminal history was a very important factor in applying the Sentencing Guidelines.  (Id. at 10-11.)  Petitioner was told that the magistrate judge could not determine where petitioner fell on the Sentencing Guidelines because the Presentence Report had not been completed, which petitioner said he understood (Id. at 11.) Petitioner also said he understood that, for the same reason, it

was unlikely his attorney knew exactly where petitioner would fall on the Sentencing Guidelines.  (Id.)  Petitioner was told that he would not be able to withdraw his guilty plea if his attorney had given him an estimate of where the attorney thought petitioner was going to fall on the Sentencing Guidelines and it turned out not to be correct.  (Id. at 11.)  Petitioner said he understood.  (Id. at 12.)

The court also specifically discussed the waiver of sentence appeal provision, which the court summarized, and petitioner stated he understood.  (Id. at 13.)  The court asked petitioner if he was making the waivers knowingly and voluntarily, and petitioner stated "Yes, ma'am."  (Id. at 14.)

Petitioner was then advised of the following rights by the magistrate judge (id. at 16-18): He had the right to plead not guilty and could persist in his not guilty plea; he had the right to the effective assistance of an attorney at every stage of the criminal proceedings and his attorney would continue to represent him throughout the proceedings; he had the right to a speedy and public trial by a jury; the burden of proof was upon the United States; the burden of proof was beyond a reasonable doubt; he would not have to prove anything; he was presumed innocent; he had the right to cross-examine the witnesses against him; he could challenge any other evidence the government brought forward; he had the right to call witnesses to testify on his behalf; he had the right to compulsory process to obtain witnesses; at trial he would

-10-

have the right to make the decision as to whether or not he wanted
to testify; he had an absolute right to remain silent, and could
testify or not at trial; and if tried by a jury, all twelve jurors
would have to unanimously agree on his guilt before he could be
convicted.  Petitioner was then told that if he pled guilty there
would be no trial and he would be waiving his rights.  (Id. at 18.)

Petitioner was further advised that he may have defenses to
the charge, but by pleading guilty he would waive those defenses,
waive his right to challenge the way the government obtained any
evidence, statements or confessions, and that he would lose the
right to complain on appeal of any rulings of the Court in the
case.  (Id. at 19.)  Petitioner acknowledged that he understood
these points as well.  (Id.)

The magistrate judge explained the elements of the offense,
which petitioner stated he understood.  (Id. at 19-20.)  The
magistrate judge asked petitioner if he had read the factual basis
set forth in the Plea Agreement carefully and whether he agreed
with the facts, and petitioner said yes to each question.  (Id. at
20.)  Petitioner said there were no facts he did not agree with.
(Id.)  The government attorney summarized the factual basis for the
offense in open court (id. at 20-23), then petitioner stated in his
own words what he had done to commit the offense (id. at 23-25).
The magistrate judge asked petitioner if he still desired to plead
guilty, and petitioner said yes.  (Id. at 24-25.)  The magistrate
judge asked if there was anything else petitioner wanted to ask his

attorney which bore on his decision to enter a plea of guilty, and petitioner said no. (Id. at 25.)

Petitioner was asked how he pled to Count One, and he stated "Guilty." (Id. at 25.)  The magistrate judge asked if petitioner was pleading guilty freely and voluntarily, and petitioner said yes.  (Id.)  The magistrate judge found that petitioner's guilty plea was  knowingly, intelligently and voluntarily made and not the result of threats or promises other than those in the Plea Agreement.  (Id. at 25-26.)

### C.

Petitioner argues that the ineffectiveness of his attorney resulted in his guilty plea not being knowing and voluntary.  The record establishes no ineffective assistance of counsel and that petitioner's guilty plea was knowing and voluntary.

The Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular

case, viewed as of the time of counsel's conduct." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)(quoting Strickland, 466 U.S. at 690). This judicial scrutiny is "highly deferential." Id. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).

Petitioner asserts that he told his attorney that he was never in contact with the drugs, that he did not know if the drugs were present, and that his conduct was designed to ensure the confidential informant was carrying a large sum of money so that petitioner could rob the informant. With this knowledge, petitioner alleges that his attorney failed to prepare for a trial, induced him to plead guilty by leading petitioner to believe that was his only option, made false statements about the length of sentence, and did not tell petitioner about the possible career offender enhancement.

Regardless of what petitioner may have initially told his attorney, the testimony petitioner gave under oath at the change of plea hearing clearly established his guilt and did not suggest any possible defenses or the desirability of a trial. The government proffered that a confidential source called petitioner on September 22, 2005, and placed an order for $6,000 work of crack cocaine.

-13-

During a 2:30 p.m. telephone call petitioner stated he had the crack cocaine in his possession and could deliver it at any time. In a 5:45 p.m. telephone conversation, petitioner told the confidential source that he was on his way with the crack cocaine. Petitioner arrived at the confidential source's residence with another person as the passenger in the vehicle.   Officers subsequently found 122.9 grams of crack cocaine in a telephone box located between the driver and passenger seat.   (Cr. Doc. #38 at 21-23.)   Petitioner told the magistrate judge that he had read the factual basis portion of the Plea Agreement, agreed with the facts, and did not disagree with any of the facts.   (Id. at 20.)   When questioned by the magistrate judge, petitioner stated that he had the crack cocaine with him, and that it was his intent to sell the crack cocaine to the confidential source for $6,000, and that it was about 120 grams of crack cocaine.   (Id. at 23-25.)   At the sentencing, petitioner apologized for committing the offense.   (Cr. Doc. #35, p. 14.)

"[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.   Solemn declarations in open court carry a strong presumption of verity.   The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."   Blackledge v. Allison, 431

U.S. 63, 73-74 (1977).  Petitioner has not satisfied this burden. Both the government's proffer and petitioner's testimony clearly establish his guilt.

Petitioner also alleges that his attorney induced him to plead guilty by leading petitioner to believe that was his only option. The record of the change of plea hearing affirmatively refutes this claim.  The magistrate judge told petitioner he could persist in his plea of not guilty or he could plead guilty.  (Cr. Doc. #38, p. 16).  Petitioner stated that he had fully discussed the charges with his attorney (id. at 5-6, 20), and there were no threats or promises made to him (id. at 6, 8).

Petitioner also asserts that his attorney made false statements about the length of sentence.  Petitioner never identifies what false statements were made, but in any event the record establishes that petitioner was given accurate information by the magistrate judge which he said he understood.  As discussed above, the magistrate judge informed petitioner of the statutory maximum sentence, including the mandatory minimum, as well as the Sentencing Guidelines and the inability of anyone to predict with certainty what petitioner's sentence would be.

Finally, petitioner argues that he was not told about the possible career offender enhancement.  Reference to a possible career offender enhancement was not set forth in the Plea Agreement and was not discussed at the change of plea hearing.  The requirements of a guilty plea proceeding are governed by FED. R.

CRIM. P. 11.   Rule 11 only requires that the court inform a defendant of the maximum statutory penalty that could be imposed and ensure the defendant is aware of the Sentencing Guidelines and has discussed them with counsel; it does not require that the court make defendant aware of possible Sentencing Guideline sentencing enhancements, including a career offender enhancement.   United States v. Brown, 526 F.3d 691, 708-09 (11th Cir. 2008), petition for cert. filed, No. 08-5564 (Jul. 28, 2008).   As set forth above, petitioner was fully advised of the necessary information at his change of plea hearing.

The Court finds that the entirety of the guilty plea colloquy clearly establishes that petitioner understood what he was doing, and that the guilty plea was made knowingly and voluntarily.   In light of the clear record of the plea colloquy, the Court concludes that petitioner's claims of an involuntary and unknowing guilty plea are without merit.

Accordingly, it is now

**ORDERED**:

1.   Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, and to Correct, Sentence By a Person in Federal Custody (Cv. Doc. #1) is **DENIED** as to all claims for the reasons set forth above.

2.   The Clerk of the Court shall enter judgment accordingly and close the civil file.   The Clerk shall place a copy of the civil Judgment in the criminal file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___7th___ day of January, 2009.


                                          JOHN E. STEELE
                                          United States District Judge


Copies:
Counsel of record
Ryan Willis